McFarland, J.,
delivered the opinion of the court.
The question in this case is one of some interest and practical importance, and one which, so far as we know, has not been directly decided. The facts raising the ques-tion are, in brief, that one Jones, a constable, under an execution from a justice of the peace, levied upon a stock of goods belonging to Denton, the execution debtor, and took actual possession of them. Two> other constables, Morgan and Steele, assumed to malee levies on the same goods, subject to Jones’ levy, to satisfy justices’ executions in their hands. These latter, however, were subsequently ascertained to have been issued upon void judgments, and were abandoned.
While Jones, Morgan and Steele, together with Denton, were proceeding to take an inventory of the goods, Losey, deputy sheriff, came- to the storehouse with an execution from the circuit court of Davidson county, against Denton, in favor of Cheatham & Co. Upon being admitted he was informed of the previous levies, he inquired the amount of the executions of Jones, Morgan and Steele, made a memorandum of these, and said he would levy subject to-their levies. No obiection or reply of any sort was made to this, he did not take or attempt to- take any possession oi control of the goods or any of them, he remained a few minutes and left. One of the witnesses (Denton) proves that Losey, as he started to go out, said to Jones, “I suppose you will let me have what there is left,” but lie does not remember -that J ones said anything in reply. If Morgan *323 and Steele -said anything they -said “all right,” or something to that effect-, but he does not know that they said anything. This was all that occurred. Losey indorsed on his execution a levy upon the goods subject to the previous levies. The present complainants obtained judgment, had execution against Denton returned nulla bona, and file their bill to reach the surplus after paying the first execution in the hands of Jones, and especially attacking as invalid the levy of Losey. The goods were attached and sold by order of the court, and after paying the execution in the hands of Jones, a small balance was left, and the question is who 'is entitled to this balance; the complainants, or the defendants, Cheatham & Co-.
The question turns upon the effect and validity of the levy of l/osey. The chancellor, in a learned and able opinion, which we have examined, held the levy to- be valid, and gave the surplus accordingly.
A decision of the question can only be reached by the application of general principles. An officer who seizes goods under an execution, if his process and levy be valid, becomes vested with a title to the goods, and entitled to their possession and control; his property in the goods is not absolute, however, but “only special,” and for the particular purpose of being applied to the satisfaction of the execution. The debtor is still the general owner of the goods, subject to this special ownership of the officer for the particular purpose, so that if the execution be otherwise satisfied, released or discharged, the debtor’s property and right of possession again becomes absolute, or if the goods be sold by the officer having a surplus, the debtor is entitled to it. So, it has been held that a debtor whose property is in the hands of an officer under levy, may sell the property subject to the levy, and the purchaser may be entitled to the-surplus, and hold the same against the claim of another officer whose levy -was made subsequent to the sale, but while the property was in the hands of the first officer. Al *324 exander v. Speiry, 5 Ire. Law (N. C.), 415; see also Peohleten v. Shinses, 4 Dev. & Battle, 156. So, then, the question is whether this right or title still in the debtor may be taken by another officer, while the goods are in fact held by the first. We think the practice has been general for the same officer to make additional levies under executions subsequently coming to his hands, and apply the proceeds in the order of the levies, and to this we see no objection. The right winch the debtor has in goods held by an officer may be regarded as a legal and not mere equitable title, and if a. subsequent levy be in fact made, it would no doubt be held good. The question arises as -to what constitutes a valid levy upon personal goods. We have held that it does not consist alone in writing the levy upon the process. The goods must, in fact, be seized or taken control of by the officer. Actual manual seizure is not necessary, but he must assume dominion and control over them, and the goods must be present or subject to his control. lie may leave them in the hands of the debtor or any other- person, but the possession in such case is that of the officer. See Bradley and Dortch v. Kesee et al., 5 Cold., 223; 3 Head, 429.
So, we held in a recent unreported case [the case of Evans v. Higdon, since reported in 1 Bax., 245, is doubtless the one here referred to, though there is only a mule and not a horse and a mule involved], that where one officer with an execution in his hands found a horse and a mule in a stable locked up which he could see but could not get possession of, he indorsed a levy upon his execution and went away without any arrangement by which he could maintain any control or possession of the property; another officer came and succeeded in taking actual possession under his execution, which possession he held, we held the latter officer’s levy to be superior.
In case where one officer has control and possession of the property under his levy, how can another officer obtain any possession or control of the goods without the first *325 officer’s consent. The first lias made bis levy, claiming to bold all tbe goods for tbe satisfaction of bis execution, and for tbis purpose be must bave complete control; but there may be a surplus, which will belong to tbe debtor. Can tbe next officer acquire tbe right to tbis surplus by indorsing bis levy upon bis execution? How can be enforce bis claim? He' bas no control of tbe goods, unless tbe first officer* agrees to bold for him. It may be conceded .that if tbe first officer agrees to bold tbe surplus goods or money for tbe second, tbe levy would be good, for constructively, tbe possession is joint; but is tbe first officer bound to do this upon simply being notified? Suppose in tbis case Jones bad sold tbe goods and paid tbe surplus to Denton, tbe debtor, or suppose be bad applied tbe surplus to other executions subsequently coming to bis bands, would Losey bave bad any remedy against him? Jones was informed that Losey proposed to levy subject to bis levy, but Losey made no effort to enforce tbe levy — did not attempt to make any arrangement with Jones to bold either tbe surplus goods or surplus money for him, for bis remark at tbe time amounted to nothing, as be did not even wait for a reply.
It may be said that Losey did all be could do. Tbis may be true, but Jones undoubtedly bad tbe right to bold tbe absolute control of tbe goods under bis levy. If be chose not to agree to a joint levy or to bold possession of both, Losey would bave bad no power to enforce bis demands. So that while Denton, tbe debtor, was still tbe general owner of tbe goods of which there might turn, out ix> be a surplus after satisfying tbe first execution, which stuplus would rightfully be subject to tbe second execution, yet Losey could not for tbe time take these goods or surplus under bis execution, for tbe reason that they were all rightfully in tbe possession of, and under tbe control of, Jones under tbe first execution, and Jones did not release bis control or agree to bold under a joint seizure. It is difficult *326 to conceive of a valid levy upon personal goods when the office!' acquires no possession, either actual or constructive, or no right or power, either directly or indirectly, to enforce his claim. The law could impose no duty upon Joues with regard to the execution of the process m the hands of Losey, except simply to submit to its rightful authority. If, after Jones’ execution was satisfied, Losey had, under his execution, demanded the goods left, it would have been Jones’ duty to surrender them to him; hut the law did not impose upon Joues the duty of assuming any responsibility, or talcing active steps in. assisting the second officer.
The result of this would be that where no consent is given by the first officer, the rights of others would have to await the sale under the first execution. No' objection was made to the bill filed in this case, and we therefore decide nothing: as to whether this was an appropriate remedy. If Losey’s levy did not hold the surplus, the complainants would taire it under this bill. Decree reversed and decree for the complainant.